UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| DAVAUS, LLC | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. |
| | ) |
| S7 IP HOLDINGS, LLC, and | ) |
| SHAWN GENGERKE | ) |
| | ) |
| Defendants. | ) |

**COMPLAINT FOR DECLARATORY JUDGMENT**

COMES NOW Davaus, LLC ("Davaus") and files its Complaint for Declaratory Judgment against Defendant S7 IP Holdings LLC and Defendant Shawn Gengerke (collectively "S7"). Davaus seeks declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202 declaring United States Patent No. 9,961,830 ("the Patent" or "the '830 Patent") to be not infringed, invalid, or unenforceable.

**PARTIES**

1. Plaintiff Davaus, LLC is an Indiana limited liability company, with its principal place of business in Hoagland, Indiana.

2. Defendant S7 IP Holdings, LLC is a South Dakota limited liability company with its principal place of business in Groton, South Dakota. On information and belief, all members of S7 IP Holdings, LLC are natural persons domiciled in South Dakota.

3. Defendant Shawn Gengerke is a natural person, domiciled in the state of South Dakota. Mr. Gengerke is a citizen of the state of South Dakota.

**JURISDICTION AND VENUE**

4. This Court has subject matter jurisdiction over Davaus's request for declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.  Further, this complaint arises under the patent laws of the United States, 35 U.S.C. § 100 et. seq., and this Court further has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

5. S7's conduct and representations, including particularly its letters dated August 18, 2023 and September 7, 2023, constitute accusations that a Davaus product infringes the Patent and further constitutes a threat that S7 intends to enforce the Patent against Davaus. S7 has demanded that Davaus immediately cease producing and selling a product that Davaus currently produces and sells. An actual, justiciable, immediate, and real controversy exists between Davaus and S7 concerning the noninfringement, invalidity, and unenforceability of the Patent.

6. S7's threats, including particularly the letters of August 18, 2023 and September 7, 2023, portend actual and imminent injury to Davaus that can be redressed by this Court. S7's threats and demands, including its demand that Davaus immediately cease production and sale of certain products currently in commerce, are of sufficient immediacy and reality to warrant this Court to issue declaratory judgment.  Absent a declaration of noninfringement, invalidity, or unenforceability of the Patent, S7's continued wrongful threats, assertions, and demands related to Davaus products will harm Davaus.  The facts alleged throughout this Complaint, under all the circumstances, show that there is a substantial controversy between Davaus and S7, that Davaus and S7's legal interests are adverse, and this controversy is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

7. Upon information and belief, S7 sells and has sold substantial products into the State of Indiana and has systemic and continuous contacts with customers in the State

of Indiana. For example, S7's commercial website, www.leadingedgeind.com, allows an Indiana customer to order S7's product, which it calls the Harvest Sweep, with no restriction on sales in and to the State of Indiana.

8. S7 has specific contacts with the State of Indiana in relation to this lawsuit, insofar as S7 has sent threatening letters into this State and District demanding that Davaus cease producing and selling certain products, such production and sales by Davaus also occurring in this State and District.

9. Venue in this District is proper pursuant to 28 U.S.C. § 1391, insofar as a substantial part of the events or omissions giving rise to this Complaint occurred in Hoagland, Indiana. Venue is also proper pursuant to 28 U.S.C. § 1400(b), insofar as S7 has accused Davaus of infringing one or more of the Patents and Davaus has a regular and established place of business in this District.

## FACTUAL BACKGROUND

10. Davaus is a company that designs and manufactures solutions for the American farmer.

11. One product manufactured and sold by Davaus is the Kernel Keeper™, which features kernel-retaining stalk-gap rails and gathering chain-brushes. The Kernel Keeper™ is intended to increase the yield of corn crops by reducing the number of kernels lost in the harvesting process.

12. One part of the Kernel Keeper™, the rails, is already subject to a patent application, which Davaus submitted on or around October 7, 2022.

13. This present dispute came to light on August 18, 2023, when S7 and Mr. Gengerke, through counsel, sent a letter to Pride Solutions LLC, which is a distributor of the Kernel Keeper™. The letter alleged that the Kernel Keeper™ infringed on the Patent. The letter stated in pertinent part:

> We recently learned that you are offering a product you refer to on your website as the CA555 Kernel Keeper, a kit for Case IH, Hew Holland and John Deere Corn Heads. In your advertising, you say that the kit includes "Keeper rails" that "cushion ears" to "reduce shelling and guide loose kernels into the auger bed." You also say, "Finger brushes mounted on each gathering chain lug sweep loose kernels into the auger bed." What you call "Keeper rails" are substantially the same as the guard rails 44 shown and described in the '830 patent. What you call the "cushion ears" are substantially the same as the cushions 46 pf the '830 patent, and your cushion ears have brushes just like the brushes 52 of the '830 patent.
>
> Since the claims of the '830 patent (i.e., the numbered paragraphs beginning at the middle of column 5 of the patent) define its scope, we compared the claims to your kit as demonstrated in a video you posted on YouTube using the link to that video on your website, i.e., https://youtu.be/qJt76TJCYWQ. This comparison demonstrates that you are either directly infringing, inducing infringement or contributing to the infringement of at least claims 1 through 3 of the '830 patent.
>
> We believe the actual damage your infringement is causing our client exceeds your revenues from sales of the infringing products for at least three reasons. First, you are selling a product made from inferior, less durable materials than our client's product. This will tarnish the reputation of the product category. Second, your price point is lower than our client's such that your infringement is likely to lead to price erosion. Third, our client's per unit profits exceed the price you are charging, and the law is clear, a patent owner is entitled to recover its lost profits even if those profits exceed the infringer's revenue.
>
> Now that we have brought this matter to your attention, we expect that you will respect our client's patent rights and immediately cease the manufacture, importation, use and sale of the infringing CA555 Kernel Keeper. This includes cessation of all advertising of the infringing goods, taking down all videos and social media posts related to the goods, and removing all references to the infringing product from your website. We also demand that you account for the sales that have been made. Specifically, we need to know how many of each product you have made, how many of each product you have been sold, and your revenues derived from the sale of each product. If you acquired the infringing products you are selling from someone else, we would need you to provide us with the contact information for your supplier, the quantities you purchased from the supplier, and what you paid for the infringing product. Upon receipt of this information, we will calculate and send to you the payment required to fully resolve this infringement matter.

14. In a letter dated August 31, 2023, Davaus, through counsel, responded to the allegations contained in the S7 letter of August 18, 2023. In that letter, Davaus informed S7 that Davaus was the owner and manufacturer of the Kernel Keeper™, not Pride Solutions LLC. Davaus also explained its analysis on why the Kernel Keeper™ does not infringe on the Patent.

15. In the letter of August 31, 2023 Davaus explained its assessment of the allegations as follows:

a. In general, patent infringement is established by determining whether the claims "read on" the accused device. More particularly, the analysis of patent infringement is a two-step process. First the court determines the scope of the claims, and then the fact finder compares the construed claim to the accused device to determine as a matter of fact whether all the claim limitations are present, either literally or by a substantial equivalent, in the accused device.

b. The '830 patent includes six independent claims, claims 1, 2, 3, 4, 7 and 17.

c. Claim 1 is limited to and requires, among other things, a *steel* guard rail (44) along the rectilinear edges of the stripper/deck plates (44) and means for cushioning impacts between the corn ears and the gathering chain paddles/lugs (30):

> 1. In a row unit for a combine cornhead, a combination comprising:
> (a) first and second flat stripper plates mounted to a frame in coplanar relationship with adjacent rectilinear edges of the first and second stripper plates spaced apart from one another by a gap, <u>said stripper plates each including a steel guard rail along the rectilinear edges</u> defining the gap extending upward from a top surface of the stripper plates;
> (b) a plurality of paddles affixed to a pair of endless gathering chains, said gathering chains extending around drive sprockets disposed proximate a first end of the first and second stripper plates and about idler sprockets disposed proximate a second end of the first and second stripper plates wherein the pair of gathering chains are positioned such that paddles on adjacent flights of the pair of gathering chains extend inward from and above the guard rails; and
> (c) <u>means for cushioning impacts between corn ears being harvested and the paddles and stripper plates</u> and means for sweeping loose kernels from the stripper plates.

d. The limitation requiring the guard rails to be made of "steel" was added to overcome the prior art cited by the US PTO examiner so that prosecution history-

based estoppel excludes the use of the doctrine of equivalents, and the claim is clearly limited to "steel" guard rails.  Also, a "means for" performing a function element is construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.  In this regard, the only means described in the '830 specification for cushioning impacts is the L-shaped cushioning element (46) which extends atop the paddles/lugs (30):



      e.      The Kernel Keeper™ rails are not made of steel.  Nor does it include anything extending atop the paddles/lugs (30) which functions to cushion impacts between the corn ears and the gathering chain paddles/lugs (30).  Accordingly, claim 1 is not infringed literally or equivalently at least for these reasons.

      f.      Independent claims 2, 3 and 4 are each similarly limited to and require, among other things, a cushioning element to cushion impacts between the corn ears and the gathering chain paddles/lugs (30):

> 2. In a row unit for a combine cornhead having first and second flat stripper plates mounted to a frame in coplanar relationship with adjacent rectilinear edges of the first and second stripper plates spaced apart from one another by a gap; driven stock snap rollers disposed below the stripper plates and longitudinally aligned with the gap for drawing cornstalks down through the gap for separating corn ears from their stocks; a pair of endless gathering chains extending around drive sprockets disposed proximate a first end of the first and second stripper plates and about idler sprockets disposed proximate a second end of the first and second stripper plates; a plurality of paddles joined to the gathering chains for moving

corn ears separately from their stocks to a conveyor adapted to carry corn ears to a shelling station wherein the improvement comprises:

<u>a plurality of cushion members operatively coupled to the pair of endless gathering chains and disposed such that corn ears being stripped from cornstalks by the stripper plates engage the cushion member before striking the paddles and stripper plates for reducing butt shelling of kernels from the ears</u> and flexible wipers affixed to the cushion members for moving corn ears and any loose kernels of corn to said conveyor.

3. In a row unit for a combine cornhead, a combination comprising:

a) a pair of gathering chains, each surrounding a pair of longitudinally aligned and spaced apart chain sprockets journaled for rotation to a frame to define inner and outer flights on the gathering chains, the gathering chains each having paddles affixed to spaced-apart links of the gathering chains;

b) <u>a plurality of cushioning members joined to the paddles so as to cushion impacts between corn ears being harvested and the paddles</u>; and

c) the cushioning members supporting brush bristles.

4. In a row unit for a combine cornhead, a combination comprising:

(a) first and second flat stripper plates mounted to a frame in coplanar relationship with adjacent rectilinear edges of the first and second stripper plates spaced apart from one another by a gap, said stripper plates each including a guard rail along the rectilinear edges defining the gap and extending upward from a top surface of the stripper plates;

(b) a plurality of paddles affixed to a pair of endless gathering chains, said gathering chains each extending inwardly around a drive sprocket disposed proximate a first end of the first and second stripper plates and about an idler sprocket disposed proximate a second end of the first and second stripper plates, wherein the pair of gathering chains are positioned such that paddles on adjacent flights of the pair of gathering chains extend inward from and above the guard rails; and

(c) <u>a cushioning element comprising a generally L-shaped resilient plastic member having a first leg clamped to a front surface of the paddles and a second leg extending over and beyond a top surface of the paddles</u>.

   g. The Kernel Keeper™ does not include anything extending atop the paddles/lugs (30) which functions to cushion impacts between the corn ears and the gathering chain paddles/lugs (30), and so claims 2, 3 and 4 are clearly not infringed literally or equivalently at least for this reason.

   h. Independent claims 7 and 17 are each similarly limited to and require, among other things, a *steel* guard rail (44):

> 7. In a row unit for a combine cornhead, a combination comprising:
> (a) first and second flat stripper plates mounted to a frame in coplanar relationship with adjacent rectilinear edges of the first and second stripper plates spaced apart from one another by a gap, said stripper plates each including a guard rail along the rectilinear edges defining the gap and extending upward from a top surface of the stripper plates, <u>said guard rails each comprising an elongate steel strip of generally rectangular cross-section, except for a radiused upper edge and a tapered leading edge portion</u>, the guard rails being attached individually to said rectilinear edges of the first and second stripper plates; and
> (b) a plurality of paddles affixed to a pair of endless gathering chains, said gathering chains each individually extending around a drive sprocket disposed proximate a first end of the first stripper plate and about an idler sprocket disposed proximate a second end of the first stripper plate and about a drive sprocket disposed about a first end of the second stripper plate and an idler sprocket disposed proximate a second end of the second stripper plate, wherein the pair of gathering chains are positioned such that paddles on adjacent flights of the pair of gathering chains extend inward from and above the guard rails.

> 17. A deck plate for a combine cornhead comprising:
> a planar steel sheet of a predetermined thickness dimension having a top surface, a bottom surface and a rectilinear edge extending from a rear end of the sheet toward, but short of, a front end portion of the sheet, said front end portion having an arcuate edge extending rearward and smoothly joining the rectilinear edge; and
> <u>a steel guard rail of rectangular cross-section attached at least to the rectilinear edge of the sheet by weld beads formed between said bottom surface and said guard rail</u> with said guard rail extending perpendicularly upward from said top

surface such that no weld beads exist between the top surface of the sheet and the guard rail.

 i. The Kernel Keeper™ rails are not made of steel, and so claims 7 and 17 are clearly not infringed literally or equivalently at least for this reason.

 j. Because the dependent claims reference and include the limitations of the independent claims, they also are not infringed.

16. In a letter dated September 7, 2023, S7 rejected Davaus's explanation above. S7 concluded its letter as follows:

> Infringement of claim 3 is clear in view of the forgoing. Therefore, please advise both Pride Solutions and Davaus that we expect them to respect the patent rights held by my client, and demand that each of them cease (1) making, importing or selling products especially made or especially adapted for use in an infringement of the '830 patent, (2) inducing others to infringe the '830 patent, (3) using (or encouraging others to use) the Kernal Keeper™ components in a manner that infringes claim 3 or any other claim of the '830 patent, and (4) otherwise engaging in activities that infringement my client's patent rights. We further demand that Pride Solutions and Davaus each account for the sales that have been made. Specifically, we need to know how many of each product each has made, how many of each product each has sold, and each of their respective revenues derived from the sale of each product. We understand that Davaus has supplied Prime Solutions with the products in question. If Davaus acquired the infringing products from someone else, we would need Davaus to provide us with the contact information for its supplier, the quantities Davaus purchased from the supplier, and what Davaus paid for the infringing product. We also need the price Davaus charges Pride Solutions for the products Pride Solutions acquired from Davaus. Upon receipt of this information, we will calculate and send to you the payment required to fully resolve this infringement matter.
>
> Please let us have your written assurance by September 18, 2023, that the infringing activities of Pride Solutions and Davaus have ceased. By that same date please also provide the manufacturing and sales information for each organization as requested above.

17. Upon information and belief, S7 intends to initiate legal proceedings against Davaus unless Davaus stops manufacturing and selling the Kernel Keeper™.

## COUNT I:

## DECLARATORY JUDGMENT OF NONINFRINGEMENT

18. Davaus reasserts and reincorporates the foregoing paragraphs as though fully set forth herein.

19. No claim of the Patent has been infringed, directly, indirectly, or equivalently, by Davaus or the purchasers of Davaus products by their use of Davaus products, specifically the Kernel Keeper™.

20. There exists a substantial controversy between Davaus and S7 of sufficient immediacy and reality to warrant issuance of declaratory judgment that Davaus and its purchasers have not and do not infringe the Patent.

## COUNT II:

## DECLARATORY JUDGMENT OF NONINFRINGEMENT

21. Davaus reasserts and reincorporates the foregoing paragraphs as though fully set forth herein.

22. The claims of the Patent are invalid for failure to comply with the requirements of patentability as set forth in 35 U.S.C. §§ 1 et. seq., including without limitation 35 U.S.C. §§ 102(a), 103, and other judicially-created bases for invalidity, particularly to the extent that S7 asserts that the Patent is so broad that the Davaus Kernel Keeper™ or other Davaus products infringe it.

23. There exists a substantial controversy between Davaus and S7 of sufficient immediacy and reality to warrant issuance of declaratory judgment that the Patent is invalid.

WHEREFORE, Davaus prays for:

(a) A declaration that Davaus and the purchasers of Davaus products, including specifically the Kernel Keeper™, have not and are not infringing, directly, indirectly, or equivalently, any claim of the Patent;

(b) A declaration that each claim of the Patent is invalid;

(c) A declaration that each claim of the Patent is unenforceable;

(d) An order that S7 and its parents, subsidiaries, affiliates, officers, employees, agents, attorneys, and any persons in concert or participation with the same are restrained and enjoined from prosecuting, initiating, or threatening the prosecution or initiation of any action against Davaus or purchasers of Davaus products based on assertion of the Patent against the Kernel Keeper™ or use of the Kernel Keeper™.

(e) A declaration that this case is exceptional pursuant to 35 U.S.C. § 285;

(f) An award to Davaus of its costs and attorneys' fees;

(g) All other relief this Court or a jury deems just or proper under the circumstances.

## JURY DEMAND

Davaus demands a trial by jury on all issues so triable.

Respectfully submitted,

BARRETT McNAGNY LLP

*/s/ Benjamin D. Ice*
Benjamin D. Ice, #23015-53
215 East Berry Street
Fort Wayne, IN 46802
Telephone: (260) 423-9551
Fax: (260) 423-8920
E-mail: bdi@barrettlaw.com
*Attorneys for Plaintiff,*
*Davaus, LLC*