UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| DAVAUS, LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>S7 IP HOLDINGS, LLC,<br><br>    Defendant. | Case No. 1:23-CV-000398-GSL-SLC |

### OPINION AND ORDER

This matter is before the Court on Defendant's motion to dismiss for lack of personal jurisdiction or, alternatively, to transfer the case to the United States District Court for the District of South Dakota. [DE 19]. For the following reasons, the Court GRANTS Defendant's Motion and TRANSFERS this case to the District of South Dakota.

A.  **FACTUAL BACKGROUND**

Plaintiff is a limited liability company, incorporated in and with its principal place of business in Indiana. [DE 15, ¶ 1]. Defendant is a limited liability company, incorporated in and with its principal place of business in South Dakota. [DE 20, page 4]. Defendant owns U.S. Patent No. 9,961,830 ("the '830 patent"), but it operates as a holding company only and does not manufacture or sell any related products. [*Id.*]. Instead, Defendant licenses the '830 patent to Leading Edge Industries, Inc., also a South Dakota entity. [*Id.*]. Leading Edge sells a product called "the Harvest Sweep, which is a commercial embodiment of the claims of the '830 patent." [*Id.*]. Leading Edge maintains a commercial website that markets the Harvest Sweep for sale. [DE 63, page 2]. Leading Edge has had only one sales transaction for the Harvest Sweep in the state of Indiana. [*Id.*].

On August 18, 2023, Defendant sent a cease-and-desist letter to Pride Solutions LLC, a Minnesota-based distributor of Plaintiff's product—the Kernel Keeper. [DE 1, ¶ 12]. The letter alleged the Kernel Keeper infringed the '830 patent and that Pride Solutions must immediately cease the manufacture, importation, use and sale of that product. Further, the letter demanded an accounting of the sales of Kernel Keeper to "fully resolve this infringement matter." [*Id.*].

On August 31, 2023, Plaintiff responded to the August 18 cease-and-desist letter. [*Id.* at ¶ 13]. In its response, Plaintiff informed Defendant that it was the manufacturer of the Kernal Keeper, not Pride Solutions. [*Id.*]. Further, Plaintiff provided documentation, arguments, and analysis as to why Kernel Keeper did not infringe the '830 patent. [*Id.*].

On September 7, 2023, in its first direct correspondence with Plaintiff, Defendant rejected Plaintiff's explanation of noninfringement, further expounded on its allegations of infringement, and reasserted its demand for cessation and accounting. [*Id.* at ¶¶ 14, 15].

B. PROCEDURAL BACKGROUND

On September 18, 2023, Plaintiff filed this action, seeking a declaratory judgment of noninfringement and invalidity.[1] [DE 1]. Subsequently, Defendant filed this motion to dismiss, which asserted that the Court lacked personal jurisdiction over Defendant S7 IP Holdings, LLC ("S7"). [DE 19]. The motion also asserted several arguments regarding Mr. Shawn Gengerke. [*Id.*]; [DE 20, pages 8, 16]. These latter arguments are moot because the Court dismissed Mr. Gengerke as a party defendant, per the parties' stipulation. [DE 44]; [DE 45]; *see* [DE 63, page 1 n1]. The Court is left to decide only the personal jurisdiction argument relating to Defendant S7.

In its original motion, Defendant S7 sought dismissal based on a lack of personal jurisdiction, or, alternatively, Defendant asked that the case be transferred to the District of South

---

[1] Plaintiff filed an Amended Complaint on March 29, 2024, seeking the same relief. [DE 15].

2

Dakota. [DE 19]. However, in its reply brief, Defendant concedes that transferring the case is the best course of action, as opposed to dismissal, should the Court find that it lacks personal jurisdiction over the parties. [DE 63, pages 2, 12–13]. Plaintiff raised no arguments opposing this. [DE 57]. Therefore, this Court will evaluate whether the evidence of personal jurisdiction over Defendant S7 is sufficient. If it is not, then the Court will transfer the case to the District of South Dakota. *See* 28 U.S.C.A § 1406(a) (West) ("The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, *transfer such case to any district or division in which it could have been brought*.") (emphasis added).

## C. DISCUSSION

Plaintiff's suit seeks declaratory judgment of noninfringement and invalidity. [DE 1]. Because this only relates to patent law, the Court will apply the law of the Federal Circuit to its determination of personal jurisdiction. *SnapPower v. Lighting Def. Grp.*, 100 F.4th 1371, 1374 (Fed. Cir. 2024) (quoting *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1016 (Fed. Cir. 2009)).

"Determining whether personal jurisdiction exists over an out-of-state defendant involves two inquiries: whether a forum state's long-arm statute permits service of process, and whether the assertion of personal jurisdiction would violate due process." *SnapPower*, 100 F.4th at 1374 (quoting *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1359 (Fed. Cir. 2001)). Because Indiana's long-arm statute is "coextensive with the U.S. Constitution's Due Process Clause," the two inquiries collapse into one: "whether the exercise of [personal] jurisdiction comports with federal due process." *B.D. by & through Myer v. Samsung SDI Co.*, 91 F.4th 856, 860 (7th Cir. 2024).

3

Due process requires that the defendant have certain "minimum contacts" with the forum state, such that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." *Avocent Huntsville Corp. v. Aten Intern. Co., Ltd.*, 552 F.3d 1324, 1329 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). This requirement ensures that a defendant would "reasonably anticipate" being haled into court in the forum state because of his conduct and connection with the state. *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)).

The "minimum contacts" analysis is performed differently according to the basis of the personal jurisdiction asserted. *Id.* ("[T]he Supreme Court has drawn a distinction between 'specific' jurisdiction and 'general' jurisdiction."). For general personal jurisdiction, a defendant must have "affiliations with the State [] so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 119 (2014). Plaintiffs have a high burden to establish general jurisdiction because jurisdiction is conferred even when the cause of action is completely unrelated to the defendant's contact with the forum state. *Avocent*, 552 F.3d at 1330–32. For specific jurisdiction, a plaintiff must show that a defendant "has purposefully directed his activities at residents of the forum, and that the litigation results from alleged injuries that arise out of or relate to those activities." *New World Int'l, Inc. v. Ford Glob. Techs., LLC*, 859 F.3d 1032 (Fed. Cir. 2017) (quoting *Burger King*, 471 U.S. at 472); *see id.* (applying a three-part test for specific jurisdiction).

1) **General Jurisdiction**

Plaintiff argues that general jurisdiction exists over Defendant in Indiana for three reasons: first, Leading Edge Industries' internet marketing and sales campaigns have extended to the entirety of Indiana; second, Leading Edge Industries has had a single sales transaction in

Indiana; and three, Defendant and Leading Edge entered into a license agreement, in which Defendant is obligated to prosecute infringement claims. [2] [DE 57, pages 21–22]. In response, Defendant argues that Plaintiff has failed to establish that Defendant has "systematic and continuous contacts" in Indiana that would subject it to general jurisdiction in that state. [DE 63, page 5]. This Court agrees.

First, Leading Edge Industries' website and online marketing does not subject Defendant to the general jurisdiction of Indiana. A website is available to any customer in the country who has access to the Internet, and it is not specifically directed to a specific state. *Campbell Pet Co. v. Miale*, 542 F.3d 879, 884 (Fed. Cir. 2008) (citing *Trintec Industries, Inc. v. Pedre Promotional Products, Inc.*, 395 F.3d 1275 (Fed.Cir.2005)). "The ability of forum residents to access the defendants' websites . . . does not by itself show any persistent course of conduct by the defendants in the forum." *Id.* (quoting *Trintec*, 395 F.3d at 1281). Here, Plaintiff points to Leading Edge Industries' website and online advertisements, which are accessible by anyone on the Internet, and Plaintiff does not explain how this digital media specifically targets Indiana. This evidence does not demonstrate that Defendant or Leading Edge Industries "purposefully directed" its activities to Indiana and, therefore, cannot provide the basis for general jurisdiction.

Second, Leading Edge Industries' single sale in Indiana is far from sufficient to establish general jurisdiction over Defendant. *See Campbell*, 542 F.3d at 884 (finding that twelve sales to the forum's residents "falls far short of enough to reflect the substantial and continuous presence

---

[2] Leading Edge Industries is a licensee of Defendant. Plaintiff argues that Leading Edge Industries is merely an alter ego of Defendant, and Leading Edge Industries' actions and contacts are imputable to Defendant. [DE 57, pages 7–11, 20]. Defendant objects to this theory. [DE 63, pages 3–5]. At this stage of the litigation, factual conflicts are resolved in favor of the plaintiff. *Apple Inc. v. Zipit Wireless, Inc.*, 30 F.4th 1368, 1374 (Fed. Cir. 2022) (quoting *Xilinx, Inc. v. Papst Licensing GmbH & Co. KG*, 848 F.3d 1346, 1352) (Fed. Cir. 2017)). The Court will accept Plaintiff's argument and attribute Leading Edge Industries' conduct to Defendant for the purpose of the personal jurisdiction analysis in this case.

5

in the state necessary to support general jurisdiction."); *see also Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 418 (1984) (holding that "mere purchases, even if occurring at regular intervals" are insufficient to warrant an assertion of general jurisdiction); *cf Avocent*, 552 F.3d at 1335 (holding that the sale of products, which are covered by the asserted patent, may in the aggregate provide a basis for general jurisdiction, but it has no bearing on specific jurisdiction when only a claim for declaratory judgment is at issue). Plaintiff asks the Court to look beyond this single sale because "Leading Edge Industries has *invited* unlimited sales in Indiana." [DE 57, page 22]. But Plaintiff has not offered any evidence of these "invitations" for sales beyond the availability of Leading Edge Industries' website to Indiana's residents, which the Court has already deemed insufficient. Based on what Plaintiff has presented, Leading Edge Industries' commercial activity in Indiana is far short of the degree that would support the exercise of general jurisdiction over Defendant.

Third, Defendant's licensing agreement with Leading Edge Industries does not subject Defendant to general jurisdiction in Indiana. Even if the nature of the licensing agreement required that Leading Edge Industries' contacts with Indiana be imputed to Defendant, Plaintiff has not demonstrated that Leading Edge Industries' contacts are sufficient to subject it to general jurisdiction in Indiana. Accordingly, imputing Leading Edge Industries' contacts to Defendant does nothing to bolster Plaintiff's general jurisdiction argument. *New World Int'l, Inc. v. Ford Glob. Techs., LLC*, No. 15-CV-01121, 2016 WL 1069675 (N.D. Tex. Mar. 16, 2016). Notwithstanding, because the licensing agreement obliges Defendant to prosecute infringement cases for Leading Edge Industries, Plaintiff argues that Defendant is subject to general

jurisdiction wherever Leading Edge Industries conducts business. [DE 57, page 22]. This Court disagrees, and Plaintiff cites no authority that supports its assertion.[3]

Neither Leading Edge Industries' nor Defendant's contacts with Indiana are sufficient to create general jurisdiction over Defendant.

### 2) Specific Jurisdiction

Plaintiff also argues that Defendant is subject to specific jurisdiction in Indiana because Defendant "launched a campaign to remove a competing product from the marketplace." [DE 57, page 24]. In response, Defendant argues that this "campaign" only consisted of sending cease-and-desist letters, which, without more, is insufficient. [DE 63, pages 7–11]. This Court agrees.

For assessing specific jurisdiction, the Federal Circuit employs a three-factor test: "(1) whether the defendant 'purposefully directed' its activities at residents of the forum; (2) whether the claim 'arises out of or relates to' the defendant's activities with the forum; and (3) whether assertion of personal jurisdiction is 'reasonable and fair.'" *SnapPower*, 100 F.4th at 1374 (Fed. Cir. 2024) (quoting *Xilinx, Inc. v. Papst Licensing GmbH & Co. KG*, 848 F.3d 1346, 1353 (Fed. Cir. 2017) (internal citation omitted)). "Where the first two factors are satisfied, specific jurisdiction is 'presumptively reasonable.' The burden then shifts to the defendant to present 'a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Xilinx*, 848 F.3d at 1356; *Burger King Corp.*, 471 U.S. at 477.

Sending a cease-and-desist letter to a potential infringer satisfies the first two parts of this Federal Circuit test. *New World*, 859 F.3d at 1037. The patentee "purposefully directs" his activities at the resident forum by sending the letter to a resident in that forum, and the

---

[3] Plaintiff's reliance on *Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.* is misplaced because that case only deals with specific jurisdiction, not general jurisdiction. 444 F.3d 1356, 1366 (Fed. Cir. 2006).

7

subsequent declaratory judgment "arises out of or relates to" the sending of that letter. *Id; see Avocent*, 552 F.3d at 1333 (noting that the nature of a declaratory judgment "arises out of or relates to the activities of the defendant patentee in enforcing the patent or patents in suit."). However, under the third part of the test, "sending ordinary cease and desist letters into a forum, without more," is insufficient to exercise specific jurisdiction. *New World*, 859 F.3d at 1037–38 (citing *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1360–61 (Fed. Cir. 1998) (concluding that "[p]rinciples of fair play and substantial justice afford a patentee sufficient latitude to inform others of its patent rights without subjecting itself to jurisdiction in a foreign forum")). For a patentee to subject itself to a forum's personal jurisdiction, "there must be '*other activities*' directed at the forum and *related to the cause of action* besides" the cease-and-desist letters. *Avocent*, 552 F.3d at 1333 (emphasis added) (internal citation omitted)).

Here, Plaintiff does not allege that Defendant conducted any "other activities" beyond sending cease-and-desist letters. [DE 57, pages 22–25]. This extinguishes Plaintiff's basis for specific jurisdiction. Moreover, Defendant only sent two letters, and only one of these letters was to Plaintiff in Indiana. [*Id.* at pages 3–7]. The other, was to Plaintiff's distributor, whose address is in Minnesota. [*Id.*]; [DE 56-1, Exhibit A]. Even if this Court considered both letters as two contacts with Indiana, that number is still fewer than quantities already deemed insufficient by the Federal Circuit. *See, e.g., Red Wing*, 148 F.3d at 1361 (holding that three cease-and-desist letters were insufficient to create personal jurisdiction); *Avocent*, 522 F.3d at 1340 (holding that the ten to twenty cease-and-desist letters sent in *Breckenridge*, 444 F.3d at 1360, would be insufficient by themselves for jurisdiction). Plaintiff argues that the substance of these letters elevates the severity of Defendant's conduct because the letters were "substantive and fact-specific" and "included threats of litigation and attempts to force [Plaintiff] into producing

8

proprietary information." [*Id.* at page 24]. This is not the case. Defendant's cease-and-desist letters are not distinguishable from the type deemed insufficient for jurisdiction by our case law. *See id.* ("A patentee should not subject itself to personal jurisdiction in a forum solely by informing a party who happens to be located there of suspected infringement . . . . Moreover, an offer for a license within a cease-and-desist letter does not somehow convert that letter into something more than it was already.").

      Plaintiff's only cited authority to support a finding of specific jurisdiction is *SnapPower v. Lighting Defense Group*, but the facts of that case are distinguishable. [DE 57, pages 23–24]. In *SnapPower*, the defendant's cease-and-desist letter triggered a predetermined resolution process for claims of patent infringement. 100 F.4th at 1373. This process provided only three response options for the plaintiff: 1) third-party evaluation of the infringement claims, 2) direct resolution between the parties, and 3) declaratory judgement. *Id.* If the plaintiff took no action and did not respond, then its accused products would be automatically removed from sales listings. *Id.* The court found this sufficient to subject the defendant to personal jurisdiction because "[t]he automatic takedown process [] would affect sales and activities in the forum state . . . ." *Id.* at 1376. Moreover, the defendant willingly participated in this predetermined resolution process, and by identifying specific sales listings for potential removal, the defendant intentionally targeted the forum states that would be affected by the removal of these listings. *Id.* at 1378. In this case, however, Defendant's cease-and-desist letters did not automatically trigger any event or otherwise effect the marketing, sales, or other activities in Indiana. Nor did Defendant intentionally target Indiana in any other way besides sending one cease-and-desist letter to Plaintiff.

Though not specifically argued, Plaintiff's allegations relating to the license agreement between Leading Edge Industries and Defendant appear to be offered in support of specific jurisdiction.[4] [DE 57, page 22]. Specifically, Plaintiff asserts that "a licensor who is obligated under a license agreement to litigate infringement claims becomes subject to personal jurisdiction where its licensee conducts business." [*Id.*]. In other words, Plaintiff argues that because Defendant's licensee—Leading Edge Industries—conducts business in Indiana and Defendant is obligated to litigate infringement claims related to licensed patents, then Defendant must be subject to personal jurisdiction in Indiana.

"[T]he grant of an exclusive license to a licensee that resides or regularly does business in the forum" may be sufficient to subject a patentee to specific jurisdiction in the forum. *New World*, 859 F.3d at 1038 (citing *Avocent*, 552 F.3d at 1334). But "the mere existence of an exclusive license does not support a finding of specific jurisdiction." *Id.* Instead, the Federal Circuit has stated that:

> Where a defendant-licensor has a relationship with an exclusive licensee headquartered or doing business in the forum state, the inquiry requires close examination of the license agreement. In particular, our case law requires that the license agreement contemplate a relationship beyond royalty or cross-licensing payment, *such as granting both parties the right to litigate infringement cases* or granting the licensor the right to exercise control over the licensee's sales or marketing activities.

*Avocent*, 552 F.3d at 1334 (emphasis added) (quoting *Breckenridge*, 444 F.3d at 1366). Exclusive licenses that impose enforcement obligations on the patentee "reflect the kind of 'other activities' that support specific personal jurisdiction in a declaratory judgment action." *New*

---

[4] Plaintiff only makes references to the license agreement in its argument for general jurisdiction. [DE 57, page 22]. As the Court previously discussed, the license agreement has no bearing on general jurisdiction. Plaintiff's only cited authority is *Breckenridge*, 444 F.3d 1356, which only discusses license agreements in the context of specific jurisdiction. As such, the license agreement is more appropriately discussed in this section for specific jurisdiction.

*World*, 859 F.3d at 1040 (*Avocent*, 552 F.3d at 1335). However, such obligations are not sufficient where the patentee "retains nearly complete control over the patent enforcement decision." *Id.* at 1043.

Here, the license agreement is not enough to subject Defendant to specific jurisdiction. Even though Section 7 of the license agreement obliges Defendant to "protect the Patent Rights" granted under the license, Defendant has almost complete discretion in initiating patent enforcement actions. *See* [DE 59, page 3] ("Licensor agrees to protect the Patent Rights . . . when in its *sole discretion* . . . .") (emphasis added); [*Id.* at page 4] ("in the event *Licensor elects* to commence patent litigation . . . .") (emphasis added). Further, Leading Edge Industries has ceded complete control of the handling of patent enforcement cases to Defendant. [*Id.* at pages 3–4] ("Licensee agrees to cooperate with Licensor . . . to the extent necessary to protect the Patent Rights."). This dynamic does not demonstrate the "ongoing relationship" required to subject Defendant to specific jurisdiction based on an exclusive license.[5] *See New World*, 859 F.3d at 1041–1042. Not only does the license not contemplate an ongoing relationship for patent enforcement, but no such relationship has ever manifested. *See Breckenridge*, 444 F.3d at 1367 (finding such a relationship where the parties coordinated in sending cease and desist letters and in litigating infringement claims). Plaintiff has not shown that Defendant and Leading Edge Industries have coordinated any patent enforcement litigation, jointly sent cease-and-desist letters, or have any ongoing relationship beyond royalty payments.

---

[5] The license agreement is nominally "non-exclusive." [DE 59, pages 1–2]. However, in practice, it appears to be exclusive because Leading Edge Industries is the only licensee of the '830 patent and the only product that Defendant knows to read on the '830 patent is the Harvest Sweep product, which is sold by Leading Edge Industries. [DE 56-6, pages 5–8]. For the purposes of this analysis, the Court will treat the license agreement as exclusive.

11

## CONCLUSION

For these reasons, Defendant's motion is GRANTED. [DE 19]. The Court DIRECTS the Clerk of Court to TRANSFER this case to the United States District Court for the District of South Dakota, pursuant to 28 U.S.C. §1406(a), and close the case in this district.

SO ORDERED.

ENTERED: March 5, 2025

/s/ GRETCHEN S. LUND
Judge
United States District Court